UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINIC VA'SHON WRIGHT, | No. 2:16-cv-2054 JAM KJN P |
| Plaintiff, | |
| v. | ORDER |
| JEFF MACOMBER, et al., | |
| Defendants. | |

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's second amended complaint. (ECF No. 17.)

Plaintiff's Allegations

Named as defendants are Warden Macomber, Associate Warden Eldridge, Captain Roth, M. Hontz, Sergeant Reames and Correctional Officer Masterson. (ECF No. 1) The undersigned sets forth plaintiff's allegations in chronological order herein.

On or before August 23, 2014, plaintiff submitted a grievance to defendant Warden Macomber, which was "constructive notice" of plaintiff's intent to sue. (Id. at 8.) Plaintiff alleges that two days later, on August 25, 2014, defendant Masterson falsely charged plaintiff with burying a knife. (ECF No. 1 at 5, 8.) Defendant Reames cleared plaintiff of the charges. (Id.) Plaintiff alleges that defendant Macomber knew that plaintiff's rights were being violated. (Id. at

8.) Plaintiff also alleges that he was treated differently because of his Muslim faith. (Id.)

On September 3, 2014, defendant Macomber told plaintiff that defendant Roth had a "personal problem" with plaintiff because of the written grievances plaintiff had filed. (Id. at 5.) In the weeks prior to this, plaintiff had filed a number of grievances regarding his right to organize, protest and present grievances. (Id. at 7.) At some point, defendant Roth told plaintiff not to file any grievances or complaints with the warden. (Id.) Plaintiff told defendant Roth that his right to file grievances was protected by the First Amendment. (Id.)

On September 4, 2014, plaintiff was involved in a physical altercation with two inmates on the yard. (Id. at 6.) During this incident, plaintiff's jaw was broken. (Id.) After the incident, defendant Roth put plaintiff in administrative segregation ("ad seg") without any medical treatment. (Id.) Defendant Roth did not place the other two inmates involved in the incident in ad seg pending an investigation, which is the standard practice. (Id.)

On September 4, 2014, defendant Reames told plaintiff that if he did not speak up now, defendant Masterson was going to get him. (Id. at 7.) Plaintiff alleges that defendant Reames failed to report defendant Masterson's misconduct. (Id.)

On September 5, 2014, plaintiff filed several emergency grievances regarding his placement in ad seg and lack of medical care. (Id. at 6.) Defendant Macomber and Roth addressed these grievances. (Id.) On September 9, 2014, plaintiff filed another grievance because he did not receive a lock-up order telling him the reasons for his placement in ad seg. (Id.) Plaintiff alleges that he received the lock-up order beyond the 10 day time limit provided for in the regulations. (Id. at 9.)

On October 18, 2014, plaintiff filed another grievance. (Id. at 6.) Defendant Hontz interviewed plaintiff regarding this grievance. (Id.) Plaintiff told defendant Hontz that staff had violated procedural safeguards. (Id.) Defendant Hontz told plaintiff that he would be taken to committee and the charges would be corrected. (Id.) Defendant Hontz told plaintiff that they only put him in ad seg for a while so that he would act right on the yard. (Id.) Defendant Hontz asked plaintiff to drop his grievance. (Id. at 7.)

////

Defendant Eldridge reviewed the grievances which had been presented to defendant Hontz. (Id. at 7.) Defendant Eldridge was aware of the facts in plaintiff's C file, the incident report and the lock up order, and that they contained false information. (Id.) Defendant Eldridge failed to correct this information. (Id.)

Plaintiff alleges that he appeared before the classification committee on November 5, 2014. (Id. at 9.) The committee decided to transfer plaintiff due to enemy concerns, although there were no enemies documented in plaintiff's file. (Id.) Plaintiff alleges that the decision to retain him in ad seg, pending a transfer, was based on the September 4, 2014 incident, where he was deemed the victim, and an incident occurring on March 30, 2014, in which he was also named a victim. (Id. at 26.) Plaintiff alleges that the lock-up order from the March 30, 2014 incident stated that he was the aggressor, rather than the victim. (Id. at 22.)

Plaintiff also alleges that defendant Masterson prepared a confidential disclosure form in May 2015 stating that confidential information was received indicating that plaintiff's life would be in jeopardy were he to return to the B Facility General population. (Id. at 29.) Plaintiff alleges that this form was prepared almost six months after his initial placement in ad seg. (Id. at 9.) Plaintiff alleges that he was held in ad seg as a form of punishment. (Id.)

Plaintiff alleges that he was held in ad seg from September 13, 2014, until October 9, 2015, based on false and misleading information written in reports and prison documents. (Id. at 8.) Plaintiff alleges that he was held in ad seg for this time in retaliation for filing administrative grievances. (Id.) Plaintiff also alleges that he was held in ad seg for over one year based on false reports. (Id.) Plaintiff alleges that he was transferred because he was preparing to sue defendants. (Id.)

Plaintiff alleges that he is Muslim. (Id. at 8.) Plaintiff alleges that at all times relevant to his complaint, he was "treated with indifference" based on his faith. (Id.) Plaintiff alleges that he was deemed a problem because he filed a class action group appeal challenging law library access, the shortage of programs which the prison board required for religious services, and discrimination against black inmates. (Id.)

////

Discussion

### A. Claim 1: Eighth Amendment

In his first claim for relief, plaintiff alleges that defendants Macomber and Roth violated his Eighth Amendment right to adequate medical care by failing to provide treatment, including pain medication, for his broken jaw. (Id. at 12-13.) Plaintiff alleges that defendants were aware of his condition. (Id. at 13.) Plaintiff alleges that he was in needless pain for days. (Id.) Plaintiff has stated a potentially colorable Eighth Amendment claim against defendants Macomber and Roth.

### B. Claim 2: Civil Rights Conspiracy

Plaintiff alleges that all defendants conspired to violate his constitutional rights pursuant to 42 U.S.C § 1983, 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986. (Id. at 14.) Plaintiff alleges that defendants conspired to wrongly place and retain him in ad seg, as part of a conspiracy to discriminate against him based on his race and religion, and also in retaliation for his filing of inmate grievances. (Id.)

*Conspiracy Claim Pursuant to 42 U.S.C. § 1985(3), 1986*

A cause of action for conspiracy under 42 U.S.C. § 1985(3) has four elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

United Bhd. of Carpenters & Joiners of Am. v. Scott, 463 U.S. 825, 828–29 (1983). "Further, the second of these four elements requires that in addition to identifying a legally protected right, a plaintiff must demonstrate a deprivation of that right motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).

Section 1986 imposes liability on every person who knows of an impending violation of section 1985 but neglects or refuses to prevent the violation." Karim–Panahi v. Los Angeles

4

Police Dep't, 839 F.2d 621, 626 (9th Cir. 1988). "A claim can be stated under section 1986 only if the complaint contains a valid claim under section 1985." Id. (citing Trerice v. Pedersen, 769 F.2d 1398, 1403 (9th Cir.1985))

Plaintiff alleges that defendants conspired to discriminate against him based on his race, i.e., African American, in violation of 42 U.S.C. §§ 1985(3) and 1986. However, other than alleging that he is African American, and that he filed grievances on behalf of African American inmates, he alleges no facts suggesting that defendants were motivated to discriminate against him based on his race. Plaintiff does not allege any facts either demonstrating or from which it could be inferred that any defendants conspired to discriminate against him based on his race. Accordingly, plaintiff's conspiracy claims pursuant to 42 U.S.C. §§ 1985(3) and 1986 are dismissed.

*Conspiracy Claim Pursuant to 42 U.S.C. § 1983*

A conspiracy claim brought under section 1983 requires proof of "an agreement or meeting of the minds to violate constitutional rights," Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (internal quotation marks and citation omitted), and an "actual deprivation of...constitutional rights [that] resulted from the alleged conspiracy." Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (internal quotation marks and citation omitted). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." Franklin, 312 F.3d at 441 (internal quotation marks and citation omitted).

Plaintiff alleges that defendants conspired to discriminate against based on his Muslim faith  However, as with his claim alleging racial discrimination, other than alleging that he is Muslim, and that he filed grievances on behalf of Muslim inmates, plaintiff alleges no facts suggesting that defendants were motivated to discriminate against him based on his religion. Accordingly, plaintiff's claim that defendants conspired to discriminate against him based on his religion is dismissed.

Plaintiff also alleges that all defendants conspired to retaliate against him for filing administrative grievances by placing and retaining him in ad seg for 13 months based on false

5

information.

Under the First Amendment, prison officials may not retaliate against prisoners for initiating litigation or filing administrative grievances. Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005). A viable claim of retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) the inmate's protected conduct and that the adverse action (4) chilled the inmate's exercise of his First Amendment rights and (5) did not reasonably advance a legitimate penological purpose. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009) (quoting Rhodes, 408 F.3d at 567-68).

For the following reasons, the undersigned finds that plaintiff has not pled sufficient facts demonstrating that his placement and retention in ad seg did not reasonably advance a legitimate penological purpose.

The Administrative Segregation Unit Placement Notice, prepared by G. Ellin, states that plaintiff was initially placed in ad seg on September 4, 2014, because he was the victim in the September 4, 2014 fight with two inmates who were members of the Sacramento Bloods. (ECF No. 17 at 24.) This incident occurred on B yard. (Id.) The Notice also states that plaintiff was the victim of a battery on March 30, 2014, on C Yard. (Id.) However, the Administrative Segregation Notice Unit Placement for the March 30, 2014 incident states that plaintiff was placed in ad seg because he was seen striking another inmate, i.e. he was the aggressor. (Id.)

The Classification Committee Chrono from the November 4, 2014 classification committee hearing states that plaintiff had documented enemies on B Facility and C Facility based on the March 30, 2014 and September 4, 2014 incidents. (Id. at 26.) The classification committee decided to retain plaintiff in ad seg based on these enemy concerns. (Id.) The chairperson of this committee was defendant Macomber. (Id. at 27.) Plaintiff has also provided the May 15, 2015 Confidential Information Disclosure Form prepared by defendant Masterson. (Id. at 29.) The form states that plaintiff continued to have "undocumented localized enemy concerns" on B Facility as well as enemy concerns on C Facility. (Id.)

Plaintiff does not dispute that he was the victim of the September 4, 2014 B yard incident. Thus, defendants properly relied on this incident to find that plaintiff could not be released to B

6

yard for safety reasons. Plaintiff claims that defendants determined that he could not be released to C yard because they wrongly found that he was the victim of the March 30, 2014 C yard incident. Plaintiff appears to claim that he could have been released to C yard after the September 4, 2014 incident because he had no enemies on C yard, as he was the aggressor during the March 30, 2014 C yard incident.

Plaintiff has not plead sufficient facts for the undersigned to find that defendants improperly relied on the March 30, 2014 incident to find that plaintiff could not be released to C yard after the September 4, 2014 incident. The undersigned observes that plaintiff was apparently moved from C yard to B yard after the March 30, 2014 incident, suggesting that his safety would be in jeopardy were he to remain on C yard. Based on these circumstances, it appears that plaintiff may have been deemed the victim of the March 30, 2014 incident following an investigation.

If plaintiff files an amended complaint, he shall explain the outcome of any investigation regarding the March 30, 2014 incident. If plaintiff maintains that he was the aggressor during the March 30, 2014 incident, he shall address whether he was charged with a rules violation in connection with that incident and, if not, then why not.

For the reasons discussed above, the undersigned finds that plaintiff has not plead sufficient facts demonstrating that his initial placement and retention in ad seg following the September 4, 2014 incident did not advance legitimate penological goals. Because plaintiff has not demonstrated that his initial placement and retention in ad seg were based on retaliation, the undersigned also cannot find that defendant Masterson's May 2015 chrono was part of the alleged conspiracy to retaliate.

In addition, if plaintiff files a third amended complaint alleging that defendants conspired to retaliate against him by placing and retaining him in ad seg, plaintiff must plead facts from which it may be inferred that each defendant named as participating in the conspiracy shared the objectives of the conspiracy, i.e., to retaliate against plaintiff.

////

////

C. Due Process

Liberally construing plaintiff's amended complaint, the undersigned finds that plaintiff is alleging due process claims against individual defendants based on his placement and retention in ad seg. Out of an abundance of caution, the undersigned addresses plaintiff's due process claim herein.

The Due Process Clause protects Plaintiff against the deprivation of liberty without the procedural protections to which he is entitled under the law. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). To state a claim, plaintiff must first identify the interest at stake. Wilkinson, 545 U.S. at 221. Liberty interests may arise from the Due Process Clause itself or from state law. Id. The Due Process Clause does not confer on inmates a liberty interest in avoiding more adverse conditions of confinement, and under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the condition of confinement at issue. Id. at 221–23 (citing Sandin v. Conner, 515 U.S. 472, 481–84 (1995)) (quotation marks omitted). Liberty interests created by prison regulations are generally limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Wilkinson, 545 U.S. at 221 (citing Sandin, 515 U.S. at 484) (quotation marks omitted).

Plaintiff describes the conditions of ad seg as follows. Plaintiff alleges that he was forced to wear mechanical restraints when outside of his cell. (ECF No. 17 at 10.) Plaintiff alleges that ad seg was noisy at night compared to the general population. (Id.) Plaintiff alleges that he was confined to his cell on an average of 23 hours per day. (Id.) Plaintiff alleges that his property was restricted, he was not allowed to use the telephone, and his access to the law library, recreation and educational programs were "cut out." (Id.) Plaintiff alleges that he was placed on the "walk alone yard" for exercise. (Id.) Plaintiff alleges that he had mental health issues and became depressed while housed in ad seg due to isolation. (Id.)

Plaintiff's description of the ad seg conditions do not demonstrate that they constituted an atypical and significant hardship in relation to the ordinary incidents of prison life. See, e.g., Toussaint v. McCarthy, 801 F.2d 1080, 1092 (9th Cir. 1986) ("a liberty interest does not arise

even when administrative segregation imposes 'severe hardships' such as 'denial of access to vocational, education, recreational and rehabilitative programs, restriction on exercise, and confinement to [one's] cell for lengthy periods of time'") (quoting Hewitt v. Helms, 459 U.S. 460, 467 n.4 (1983)); Wyatt v. Hackett, 2009 WL 5062343, at *7-*8 (C.D. Cal. Dec. 21, 2009) (no liberty interest found in connection with a 60-day confinement in administrative segregation, because "[l]imitations on contact visitation, telephone calls, canteen visits and physical access to the law library are, likewise, within the range of limitations contemplated by plaintiff's sentence"); Jones v. McDaniel, 552 F. Supp. 2d 1141, 1146 (D. Nev. 2008) (citing Sandin and finding that the loss of telephone and canteen privileges falls within the expected scope of a criminal sentence and thus does not give rise to a liberty interest); Bryant v. Cortez, 536 F. Supp. 2d 1160, 1167 (C.D. Cal. 2008) (no protected liberty interest arose from prisoner's ad seg placement for 18 months pending adjudication of Rules Violation Report of which he ultimately was found not guilty even though he experienced reduced exercise and visitation and a loss of telephone privileges); Deadmon v. Grannis, 2008 WL 595883, at *6-*7 (S.D. Cal. 2008) (finding allegations that plaintiff lost general population privileges, was restricted to family visits behind a closed window and was disallowed phone calls, and was allowed only one package a year, one shower every three days, and a maximum of ten hours per week of yard time while in the ad seg for 15 months did not constitute "an atypical and significant hardship in light of the ordinary incidents of his incarceration" and, thus, no liberty interest existed).

Plaintiff's claim that he became depressed due to isolation also does not demonstrate that the conditions of ad seg constituted an atypical hardship. "[T]he focus of the 'atypical and significant hardship' is not on plaintiff's subjective perceptions, but rather on an objective assessment of the conditions." Poye v. California, 2012 WL 458428 at *1 (E.D. Cal. 2012); citing Sandin v. Connor, 515 U.S. 472, 486 at n, 9 (1995); White v. Steuben County, 2011 WL 4496504 * 10 (N.D.Ind.2011). The conditions plaintiff complains of do not rise to the level articulated in Wilkinson v. Austin, 545 U.S. 209, 213 (2005).

Nor does the thirteen months length of plaintiff's stay in ad seg constitute an atypical and significant hardship in relation to the ordinary incidents of prison life. See, e.g., Williams v.

Foote, 2009 WL 1520029, at *10 (C.D. Cal. May 28, 2009) (no protected liberty interest found, despite conditions harsher than those alleged by plaintiff here, for a 701 day stay in the Administrative Segregation Unit ("ASU") and Security Housing Unit, which included an 86-day stay after plaintiff was found not guilty of the disciplinary charge); Rodgers v. Reynaga, 2009 WL 62130, at *2 (D. Nev. Jan. 8, 2009) (finding that retention in ASU for five months was not an atypical and significant hardship); Bryantv. Cortez, 536 F. Supp. 2d 1160, 1167 (C.D. Cal. 2008) (18 month ASU placement was not an atypical and significant hardship).

For the reasons discussed above, the undersigned finds that plaintiff has not stated a potentially colorable due process claim based on his placement and retention in ad seg.

The undersigned also observes that plaintiff may be alleging that defendant Masterson violated his right to due process by falsely charging him with knife possession in August 2014. As discussed above, plaintiff alleges that defendant Reames cleared him of these charges. The procedural due process affords protections to defend against false accusations, it does not grant a broad right to be free from false accusations. Hernandez v. Martinez, 2013 WL 6838682, *5 (E.D. Cal. Dec. 20, 2013) (citing Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)). Accordingly, plaintiff has not stated a potentially colorable due process claim against defendant Masterson for filing false disciplinary charges.

Conclusion

For the reasons discussed above, the undersigned finds that plaintiff has stated a potentially colorable Eighth Amendment claim against defendants Macomber and Roth. Plaintiff has not stated potentially colorable claims against the remaining defendants.

Very reluctantly, the undersigned grants plaintiff leave to file a third amended complaint addressing the pleading defects discussed above regarding his conspiracy to retaliate claim. A third amended complaint must be complete without reference to other complaints, i.e., the third amended complaint shall include all claims against all defendants. If plaintiff does not file a third amended complaint, the undersigned will order service of defendants Macomber and Roth as to plaintiff's Eighth Amendment claim.

////

Accordingly, IT IS HEREBY ORDERED that plaintiff is granted thirty days to file a third amended complaint; if plaintiff does not file a third amended complaint, the court will order service of defendants Macomber and Roth as to plaintiff's Eighth Amendment claim.

Dated: November 1, 2017

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Wr2054.ame(2)