UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINIC VA'SHON WRIGHT,<br><br>Plaintiff,<br><br>v.<br><br>JEFF MACOMBER, et al.,<br><br>Defendants. | No. 2: 16-cv-2054 JAM KJN P<br><br>FINDINGS AND RECOMMENDATIONS |

I. Introduction

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' motion for summary judgment on the grounds that plaintiff failed to exhaust administrative remedies. (ECF No. 45.) For the reasons stated herein, the undersigned recommends that defendants' motion be granted.

II. Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings,

> depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).

"Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

(9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on June 8, 2018 (ECF No. 31), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

////

////

////

III. Legal Standard for Exhaustion of Administrative Remedies

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.§ 1997e(a). Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).

Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." Booth v. Churner, 532 U.S. 731, 736, 741 (2001); Ross v. Blake, 136 S.Ct. 1850, 1857, 1859 (2016). The exhaustion requirement applies to all prisoner suits relating to prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002). An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

As the U.S. Supreme Court explained in Ross, 136 S. Ct. at 1856, regarding the PLRA's exhaustion requirement:

> [T]hat language is "mandatory": An inmate "shall" bring "no action" (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies.... [T]hat edict contains one significant qualifier: the remedies must indeed be "available" to the prisoner. But aside from that exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any "special circumstances."

Id. (internal citations omitted).

Exhaustion of administrative remedies may occur if, despite the inmate's failure to comply with a procedural rule, prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process. Reyes v. Smith, 810 F.3d 654, 659 (9th Cir. 2016) (although inmate failed to identify the specific doctors, his grievance plainly put prison on notice that he was complaining about the denial of pain medication by the defendant doctors, and prison officials easily identified the role of pain management committee's involvement in the decision-making process).

4

IV. Plaintiff's Claims

This action proceeds on the third amended complaint filed January 22, 2018, as to defendants Roth, Macomber and Masterson. (ECF No. 23.)

Plaintiff alleges that while he was housed at New Folsom Prison, he was known for filing grievances. He would sometimes send them directly to defendant Macomber's office. On August 23, 2014, he sent a grievance to defendant Macomber alleging that staff had taken his personal property in retaliation for his filing grievances. Plaintiff also complained about limited law library access and that B Facility had no positive programs for inmates.

Plaintiff alleges that two days after sending the grievances to defendant Macomber, defendant Masterson falsely charged plaintiff with burying a knife on the B Facility yard. Former defendant Reames told plaintiff that the only reason he was not sending plaintiff to administrative segregation ("ad seg") was that he (Reames) looked at the yard camera tape and saw that plaintiff did not do what defendant Masterson claimed he had done. Reames told plaintiff to watch himself because some staff did not want plaintiff on the B yard.

On September 3, 2014, defendant Macomber told plaintiff that defendant Roth had a personal problem with plaintiff because of the number of grievances filed by plaintiff. Later that day, plaintiff was attacked by two inmates who broke plaintiff's jaw.

After the attack, plaintiff was put in the cage. Plaintiff complained about pain in his face and jaw to defendant Roth. Defendant Roth walked away smiling.

Former defendant Reames came by the cage and told plaintiff to speak up now or that he would be charged by defendant Masterson.

Approximately ten minutes later, plaintiff saw defendant Masterson and defendant Ellis speaking with the two inmates who attacked plaintiff. Plaintiff was then removed from the cage and seen by the Licensed Vocational Nurse ("LVN"). Plaintiff told the LVN that one of his caps "hurt bad." The LVN looked in plaintiff's mouth and told plaintiff that it's fractured. Plaintiff then sat in the dentist chair for 30 to 45 minutes. The dentist did an x-ray of plaintiff's jaw, confirming that it was broken. Plaintiff was given Tylenol 3 and a dressing was placed on his jaw because it was bleeding. Plaintiff was taken to ad seg.

Once in ad seg, plaintiff's dressing was changed every four hours until first watch. Plaintiff complained about pain and not being able to sleep. The nurses and correctional officers told plaintiff that there was nothing they could do for plaintiff until he received surgery. Plaintiff continued to suffer without any medical treatment.

On September 5, 2015, plaintiff filed several grievances regarding his failure to receive medical treatment for his broken jaw and the pain, and also regarding his placement in ad seg. Plaintiff mailed these grievances to defendants Macomber and Roth.

On February 2, 2018, the undersigned issued an order screening the third amended complaint. The undersigned found the following claims potentially colorable: 1) defendants Macomber and Roth violated plaintiff's Eighth Amendment right to adequate medical care by failing to order medical treatment for plaintiff's broken jaw; 2) defendants Macomber and Roth failed to provide plaintiff with medical care for his broken jaw in retaliation for his filing of grievances; and 3) defendant Masterson filed a false disciplinary report charging plaintiff with burying a knife in retaliation for his filing of grievances. (ECF No. 25.) The undersigned recommended dismissal of the remaining claims and defendants. (ECF No. 26.) On June 6, 2018, the Honorable John A. Mendez adopted these findings and recommendation. (ECF No. 30.)

V. Plaintiff's Opposition

On October 29, 2019, plaintiff filed a motion to continue or deny defendants' summary judgment motion. (ECF No. 48.) On November 16, 2018, defendants filed an opposition to this motion. (ECF No. 51.)

On March 14, 2019, the undersigned issued an order addressing plaintiff's motion to continue. (ECF No. 53.) The undersigned construed the motion as having been brought pursuant to Federal Rule of Civil Procedure 56(d) which provides, in relevant part,

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take

discovery; or

(3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

In the motion to continue, plaintiff requested that defendants' summary judgment motion be continued or denied so that plaintiff could conduct discovery. (ECF No. 53 at 3.) Plaintiff alleged that he required access to his C File and the disciplinary history of defendants in order to oppose defendants' motion. (Id.)

In the March 14, 2019 order, the undersigned found that plaintiff's merits-based discovery requests were not relevant to the issues raised by defendants in the summary judgment motion, i.e., whether plaintiff exhausted administrative remedies. (Id.) For these reasons, the undersigned denied plaintiff's motion to continue or deny defendants' summary judgment motion. (Id. at 4.) The undersigned granted plaintiff thirty days to file an opposition to defendants' summary judgment motion. (Id. at 5.)

On May 8, 2019, plaintiff filed an opposition. (ECF No. 55.) In the opposition, plaintiff again argues that he should be allowed to conduct discovery. (Id. at 1.) Plaintiff argues that his discovery requests will show that he exhausted administrative remedies. (Id.) Plaintiff does not otherwise describe the discovery requests related to administrative exhaustion. Plaintiff also fails to attach any relevant discovery requests to his opposition.

Relief under Rule 56(d) is not a matter of right. The nonmoving party must provide more than just "[b]are allegations or vague assertions of the need for discovery." Everson v. Leis, 556 F.3d 484, 493 (6th Cir. 2009). Instead, they "must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." Tatum v. City & Cnty. of S.F., 441 F.3d 1090, 1100 (9th Cir. 2006).

Plaintiff's opposition does not identify the specific facts that further discovery would reveal. Plaintiff fails to identify the specific documents he seeks which will demonstrate exhaustion of administrative remedies. Accordingly, plaintiff's request for further discovery, contained in his opposition, is denied.

////

Although plaintiff has failed to oppose the merits of defendants' motion, the undersigned addresses defendants' motion herein.

VI. Discussion

   A. Retaliation Claim Against Defendant Masterson

   *Defendants' Evidence*

   In support of their claim that plaintiff failed to exhaust his administrative remedies as to his retaliation claim against defendant Masterson, defendants cite the declarations of C. Burnett, Appeals Coordinator at California State Prison-Sacramento ("CSP-Sac"), and M. Voong, Chief of the Office of Appeals ("OOA") for the California Department of Corrections and Rehabilitation ("CDCR").

   C. Burnett states, in relevant part, that she conducted a search of the Inmate/Parolee Appeals Tracking System ("IATS") for appeals submitted by plaintiff "from September 2014, when the events at issue occurred, to August 2016, when he filed this lawsuit." (ECF No. 45-4 at 4.) C. Burnett found that plaintiff submitted approximately eleven appeals to CSP-Sac's Appeals Office during that time period, two of which were accepted for review and the remaining screened out. (Id.)

   C. Burnett reviewed the information available in IATS for all of the appeals accepted for review "during the relevant time frame" and none of the appeals contained any retaliation claims against defendants Masterson related to the filing of a false rules violation report, as alleged in the third amended complaint. (Id.)

   S. Voong states, in relevant part, that the OOA receives, reviews and maintains inmates' non-healthcare appeals accepted for third level review. (ECF No. 45-6 at 1.) "This is the final level of review in CDCR's administrative grievance process, and a final decision at this level is generally required to exhaust an inmate's administrative remedies for an appeal." (Id.)

   S. Voong states that she conducted a search of the grievance system covering the time period from September 2014 to August 2016, which yielded one inmate appeal submitted by plaintiff that was accepted for review at her office. (Id. at 2.) Plaintiff also submitted approximately five appeals to the third level of review during the relevant time period that were

8

rejected or screened out.  (Id.)

S. Voong searched plaintiff's appeals for retaliation claims against defendant Masterson.  (Id. at 3.)  S. Voong did not find any appeals that were accepted for review regarding these allegations.  (Id.)

S. Voong states that in Appeal No. SAC 14-03065, plaintiff appealed the rules violation where he was found guilty of fighting on October 4, 2014.  (Id. at 4.)  This appeal mentions that shortly before the fight, defendant Masterson accused plaintiff of hiding a knife in the yard.  (Id.)  Plaintiff did not mention anywhere that defendant Masterson made this accusation in retaliation for plaintiff filing lawsuits or writing appeals.  (Id.)  However, in this appeal, plaintiff attempted to file a staff complaint against defendants Masterson regarding the knife accusation.  (Id.)

SAC 14-03065 was screened out at the first level of review because the two events discussed in the grievance were unrelated.  (Id.)  "Rather than separate the [rules violation report] and staff complaint issues and properly file separate appeals, [plaintiff] incorrectly bypassed the lower levels of review and appealed directly to the third level of review where his appeal was received on December 19, 2014."  (Id.)  The OOA rejected the appeal on January 30, 2015.  (Id.)

*Analysis*

As discussed above, plaintiff alleges that defendant Masterson filed the retaliatory rules violation report on or around August 25, 2014.  C. Burnett searched for grievances filed by plaintiff beginning in September 2014.  Because it is possible that plaintiff filed a grievance regarding the allegedly retaliatory rules violation report between August 25, 2014, and August 31, 2014, C. Burnett's declaration does not demonstrate that plaintiff did not file a grievance regarding the allegedly retaliatory rules violation report.

S. Voong states that she searched the OOA records for third level grievances filed by plaintiff from September 2014 to August 2016.  Plaintiff would not have been able to file a third level grievance regarding his claim against defendant Masterson before September 2014.  For this reason, the undersigned finds that S. Voong's search of OOA records for plaintiff's grievances included the relevant time period.

////

9

S. Voong found one grievance filed by plaintiff challenging defendant Masterson's issuance of the at-issue rules violation report, i.e., SAC 14-03065. S. Voong states that this grievance was screened out, i.e., not exhausted, because it improperly contained multiple claims. See Cal. Code Regs. tit. 15, § 3084.6(b)(8) (an appeal may be rejected if it involves multiple issues that do not derive from a single event, or are not directly related and cannot be reasonably addressed in a single response due to this fact.)

To properly exhaust administrative remedies, prisoners "must complete the administrative review process in accordance with the applicable procedural rules." Woodford v. Ngo, 548 U.S. at 88. Procedural rules are not defined by the PLRA, but rather by a prison's specific grievance process requirements. Jones v. Bock, 549 U.S. at 218. The purpose of mandating exhaustion is to allow "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being hauled into court." Id. at 204.

Grievance SAC 14-03065 did not exhaust plaintiff's administrative remedies regarding his claim against defendant Masterson because the grievance was screened out for failing to comply with a procedural rule.

Based on the statements in S. Voong's declaration, discussed above, the undersigned finds that defendants have met their initial burden of demonstrating an absence of genuine issue of material fact regarding plaintiff's failure to administratively exhaust his claims against defendant Masterson. Because plaintiff has not opposed defendants' motion on the merits, the undersigned recommends that defendants be granted summary judgment as to plaintiff's retaliation claim against defendant Masterson based on plaintiff's failure to exhaust administrative remedies.

B. Retaliation and Eighth Amendment Claims Against Defendants Macomber and Roth

*Defendants' Evidence*

Defendants cite the following evidence in support of their argument that plaintiff failed to administratively exhaust his retaliation and Eighth Amendment claims against defendants Macomber and Roth.

In her declaration, C. Burnett states that from September 2014 to August 2016, plaintiff filed no grievances with the CSP-Sac Appeals Office alleging retaliation or Eighth Amendment

violations by defendants Macomber and Roth, as alleged in the third amended complaint. (ECF No. 45-4 at 4.) In her declaration, M. Voong states that after reviewing plaintiff's non-health care appeals records at OOA from September 2014 to August 2016, she did not find any appeals that were accepted for review raising plaintiff's retaliation and Eighth Amendment claims against defendants Macomber and Roth. (ECF No. 45-6 at 2-3.)

Defendants also submitted the declaration of S. Gates, Chief of the Health Care Correspondence and Appeals Branch ("HCCAB") for the Policy and Risk Management Services ("PRMS") division of California Correctional Health Care Services ("CCHCS"). (ECF No. 45-5.) The HCCAB is part of the CDCR responsible for providing oversight to administrative health care appeals relating to medical, dental and mental health care services to adult inmates within California institutions. (Id. at 1.)

S. Gates describes the procedures for submitting and processing health-care related grievances. First and second level health care appeals are processed by staff located at the respective institutions, while third level health care appeals are processed by HCCAB staff located at CCHS headquarters. (Id. at 2.) Prior to September 1, 2015, all health care appeals were required to reach a final decision at each level of review. (Id.) All grievances are subject to a third level, or headquarters level of review, before administrative remedies are deemed exhausted. (Id.)

S. Gates reviewed the Health Care Appeals and Risk Tracking System ("HCARTS") database for plaintiff "for the time relevant to his operative complaint." (Id. at 3.) The HCCART system tracks inmate health care grievances that are processed by the institution at the institutional level of review, as well as those processed by the HCCAB. (Id. at 2.) In her declaration, S. Gates discusses three grievances filed by plaintiff during the relevant time period: SAC-HC-14030258, SAC-SC-15001145, and SAC-HC-15030462.

Plaintiff submitted SAC-HC-14030258 to the first level of review, where it was received and accepted for review on December 4, 2014. (Id. at 3.) In this grievance, plaintiff wrote that he saw the dentist on November 26, 2014. (Id. at 14.) Plaintiff wrote that he had surgery on a broken jaw in two places. (Id.) Now his face was swelling and he could feel a sharp object that

11

was placed in his jaw.  (Id.)  Plaintiff wrote that he was "put off" and ignored by staff, and now staff was telling him that the dentist wants his nerves to die down so he can pull some teeth.  (Id.)  As relief, plaintiff requested to be seen by someone professional to fix his jaw and stop the swelling and aching.  (Id.)  Plaintiff wrote, "now I'm being put off over laziness?  Why wasn't my jaw fixed right the first time."  (Id.)

On January 7, 2015. Dr. Sandhu interviewed plaintiff regarding his appeal.  (Id.)  During the interview, plaintiff withdrew the appeal because he had been seen by the oral surgeon.  (Id. at 13.-14.)  Plaintiff took no further action on this appeal.

Plaintiff submitted SAC-SC-15001156 to the first level of formal review where it was received on December 24, 2014, and subsequently determined not to be a staff complaint.  (Id. at 19.)  In this grievance, plaintiff wrote that he was seen by the oral surgeon on December 14, 2014 for follow-up following his jaw surgery.  (Id.)  Plaintiff wrote that he had a plate pushing through the scar on his cheek, which the surgeon misjudged.  (Id.)  Plaintiff alleged that he told the surgeon that the plate was pushing through but received an inadequate response.  (Id.)  As relief, plaintiff requested to be seen by a different oral surgeon.  (Id.)

On February 11, 2015, Dr. Sandhu interviewed plaintiff regarding SAC-SC-15001156.  (Id. at 17.)  During the interview, plaintiff agreed to withdraw the appeal because his concerns were being addressed.  (Id.)

Plaintiff submitted SAC-HC-15030462 on or around January 28, 2015.  (Id. at 27.)  In this grievance, plaintiff expressed disagreement with his social worker because he wanted to be removed from the CCMS level of mental health care. (Id.)

*Analysis*

At the outset, the undersigned clarifies that S. Gates reviewed plaintiff's health care related grievances, which were maintained in the HCCART system.  C. Burnett and M. Voong reviewed plaintiff's non-medical grievances.  C. Burnett and M. Voong found no grievances alleging that defendants Macomber and Roth denied plaintiff medical care for his broken jaw or retaliated against plaintiff by denying him medical care for his broken jaw.

////

S. Gates identified three health-care related grievances filed during the relevant time period. SAC-HC-15030462 is not relevant to this action because it raised a claim regarding plaintiff's mental health care.

SAC-SC-1500156 is not relevant to this action because it raised a claim regarding the care plaintiff received from the oral surgeon. This grievance did not allege that defendants Macomber or Roth failed to treat plaintiff's broken jaw.

Plaintiff withdrew SAC-HC-14030258 because he received the requested relief, i.e., he was seen by an oral surgeon. In Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005), the Ninth Circuit held that a prisoner need not press on to exhaust further levels of review once he has either received all "available" remedies at an intermediate level of review or been reliably informed by an administrator that no remedies are available. Because plaintiff received the relief requested, he arguably exhausted the claims raised in this grievance.

However, the undersigned finds that SAC-HC-14030258 did not exhaust plaintiff's claims against defendants Macomber and Roth because this grievance did not clearly raise these claims. See Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (proper exhaustion also requires a grievance to be factually sufficient to "alert the prison as to the nature of the wrong for which redress is sought.") In SAC-HC-14030258, plaintiff requested to be seen by an oral surgeon because he felt that the dentist had not adequately treated his broken jaw. While plaintiff claimed that he was "put off" and ignored by staff, these allegations would not have put prison officials on notice that plaintiff was alleging that defendants Macomber and Roth failed to provide him with treatment for his broken jaw.

The fact that plaintiff withdrew SAC-HC-14030258 after being seen by the oral surgeon supports the undersigned's findings that this grievance did not alert prison officials that he was complaining about the alleged failure of defendants Macomber and Roth to treat his broken jaw. Accordingly, the undersigned finds that grievance SAC-HC-14030258 did not exhaust plaintiff's administrative remedies as to these claims.

Based on the evidence discussed above, the undersigned finds that defendants have met their initial burden of demonstrating an absence of genuine issue of material fact regarding

plaintiff's failure to administratively exhaust his claims against defendants Macomber and Roth. Because plaintiff has not opposed defendants' motion on the merits, the undersigned recommends that defendants be granted summary judgment as to plaintiff's retaliation and Eighth Amendment claims against defendants Macomber and Roth based on plaintiff's failure to exhaust administrative remedies.

VII. Plaintiff's Motion for Appointment of Counsel

On May 8, 2019, plaintiff filed a motion for appointment of counsel. Because the undersigned recommends that defendants' summary judgment motion be granted, plaintiff's motion for appointment of counsel is denied.

Accordingly, IT IS HEREBY ORDERED that plaintiff's motion for appointment of counsel (ECF No. 55) is denied; and

IT IS HEREBY RECOMMENDED that defendants' summary judgment motion (ECF No. 45) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 14, 2019

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Wr2054.sj